UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


**JON KEVIN HALL,**

    **Plaintiff,**

                                     **Case No. 3:16-cv-01233**
    **vs.**                                  **JUDGE ALETA A. TRAUGER**
                                       **Magistrate Judge King**

**SOCIAL SECURITY ADMINISTRATION,**

    **Defendant.**


**To:** The Honorable Aleta A. Trauger, District Judge


<u>**REPORT AND RECOMMENDATION**</u>

    This is an action instituted under the provisions of 42 U.S.C. §§ 405(g) for review of a final decision of the Commissioner of Social Security denying Plaintiff's application for a period of disability and disability insurance benefits. This matter is before the Court on Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 14)("Motion for Judgment") and Memorandum in Support (Doc. No. 15), Defendant's Response to Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 16)("Response"), Plaintiff's Reply (Doc. No. 17), and the administrative record (Doc. No. 10).[1] For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Judgment (Doc. No. 14) be **GRANTED**, that the decision of the Commissioner be **REVERSED,** that the matter be **REMANDED** to the Commissioner for further consideration of the opinion of Plaintiff's treating physician, and that **FINAL JUDGMENT** be entered pursuant to

---

[1] Citations to pages in the Administrative Record will appear as "Tr. ___."

1

Sentence 4 of 42 U.S.C. § 405(g).

**Introduction**

Plaintiff filed his current application for benefits in May 2013, alleging that he has been disabled since April 13, 2013. Tr. 142.[2] The application was denied initially and on reconsideration and Plaintiff requested a *de novo* hearing before an administrative law judge ("ALJ").

An administrative hearing was held on March 24, 2015. Plaintiff, represented by counsel, testified at that hearing, as did vocational expert Gary K. Sturgill, Ph.D. Tr. 34-63. In a decision dated June 12, 2015, the ALJ held that Plaintiff was not disabled within the meaning of the Social Security Act from the alleged date of onset of disability through the date of the administrative decision. Tr. 18-27. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on April 6, 2016. Tr. 1.

This action was thereafter timely filed. The Court has jurisdiction over the matter. 42 U.S.C. § 405(g).

**The Findings and Conclusions of the ALJ**

In his decision, the ALJ made the following findings of fact and conclusions of law:

  1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2016.

  2. The claimant has not engaged in substantial gainful activity since April 13, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*).

---

[2] Plaintiff filed his first application for benefits in February 2011, alleging disability since January 2010 based on the same impairments as are alleged in connection with his current application. In a decision dated April 12, 2013, the ALJ who considered that application found that Plaintiff had the residual functional capacity for a limited range of light work and was not disabled from January 2010 through the date of that decision. Tr. 67-78.

2

3. The claimant has the following severe impairments: degenerative disc disease, chronic obstructive pulmonary disease (COPD), obstructive sleep apnea, obesity, status post right ankle surgery residuals, type II diabetes mellitus, and peripheral neuropathy (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: he must never climb ladders, ropes or scaffolds, but he can occasionally climb ramps and stairs, as well as occasionally balance, stoop, kneel, crouch, and crawl. He must have the option to alternate sit or stand at will. He must avoid concentrated exposure to pulmonary irritants and work at unprotected heights or around unguarded moving machinery. Finally, he can only stand or walk four hours out of an eight-hour workday.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 25, 1964 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10 Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 13, 2013, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 20-22, 25-27).

**Summary of Relevant Evidence[3] and the ALJ's Evaluation**

Plaintiff testified that it is primarily pain in his lower back and right foot that keep him from working. Tr. 45, 46. He also has pain in his left knee. Tr. 55. If he tries to bend, the pain is "unbearable." Tr. 46. His pain medication "helps quite a bit," *id.*, but causes drowsiness. Tr. 47. He also is bothered by heat and dust. Tr. 46. He acknowledged that he worked part-time in 2011 and 2012, Tr. 41, and attended "a couple of" professional football games, Tr. 51, although he alternated between sitting and standing. Tr. 52. He does not walk for more than 10 minutes at a time. *Id*.

An April 2012 MRI of the lumbar spine showed severe left-sided facet hypertrophy at L4-5 without central canal or neural foraminal stenosis, a small central to left paracentral disc protrusion at L5-S1, and mild facet hypertrophy at L3-4 causing no impingement. Tr. 216.

In August 2013, Lloyd K. Huang, M.D., performed a consultative examination of Plaintiff at the request of the state agency. An EMG was positive for L4-5 radiculopathy. Tr. 287. On clinical examination, Dr. Huang noted reduced range of motion of the cervical and lumbar spine. Straight leg raising was negative from the seated and supine positions and motor strength was normal. Plaintiff walked with a mild limp and had moderate difficulty squatting. Tr. 286. Dr. Huang diagnosed moderate degenerative disc disease of the lumbar spine, L4-5 radiculopathy, mild degenerative joint disease of the left knee, and mild-to-moderate degenerative joint disease of the left ankle. Tr. 287. In an assessment of Plaintiff's ability to engage in work-related

---

[3]Some of the medical evidence in the administrative record was generated during and relates to the period prior to Plaintiff's current alleged date of onset of disability. *See, e.g.,* Tr. 212-271.

activities, Dr. Huang opined that Plaintiff could lift up to 40 pounds occasionally and up to 20 pounds frequently; he could carry up to 30 pounds occasionally and up to 20 pounds frequently. Tr. 291. Plaintiff could sit for up to 7 hours in an 8 hour work day, for 2 hours at a time, stand for up to 6 hours, for 1 hour at a time, and walk for up to 4 hours, for 1 hour at a time. Tr.292. He could occasionally reach and push/pull, but could continuously use his hands for fingering and feeling; he could occasionally use his feet to operate foot controls. Tr. 293. He should never kneel or crawl, and would have some environmental limitations. Tr. 294.

In August 2013, Reeta Misra, M.D., reviewed the evidence for the state agency and concluded that Dr. Huang's assessment was "too restrictive" and not supported by his own findings on examination and by other evidence of record. Tr. 90-91. According to Dr. Misra, Plaintiff could lift and carry up to 20 pounds occasionally and up to 10 pounds frequently. He could sit and could stand or walk for a total of 6 hours in an 8-hour workday. He was unlimited in his ability to push or pull. Plaintiff could only occasionally stoop, kneel, crouch, crawl, balance and climb ramps and stairs, and could never climb ladders. Tr. 88. In December 2013, Nathaniel Robinson, M.D. agreed with this assessment. Tr. 99.

Matthew L. Brust, M.D., has treated Plaintiff as his primary care physician since at least January 2013 for a number of conditions, including degenerative disc disease. Tr. 307.[4] Dr. Brust prescribed pain medication and, on occasion, pool therapy. Tr. 303, 308, 310, 312.

A September 2013 MRI of the lumbar spine showed no acute findings

---

[4] Plaintiff testified that he has treated with Dr. Brust since "early 2000." Tr. 50.

5

or significant interval changes when compared to an April 2010 MRI. Tr. 428-29. There was mild concentric disc bulging at L3-4 with no significant spinal canal stenosis, and moderate right and severe left facet joint degenerative joint disease with extensive osseous hypertrophy at L4-5, and mild to moderate bilateral facet joint degenerative joint disease with no significant foraminal narrowing at L5-S1. Tr. 428-29. *See also* Tr. 485.

In September 2013, Son D. Le, M.D., a spine specialist with the Center for Spine, Joint & Neuromuscular Rehabilitation, saw Plaintiff for an assessment of his back problems. On clinical examination, Dr. Le noted poor range of motion of the lumbar spine in all planes. There was diffuse tenderness to palpation. Manual muscle testing was normal, and sensation to pinprick was within normal limits except for the left L4-5 dermatome and myotome. Tr. 524. Dr. Le recommended left L4-5 lumbar transforminal steroid injections. Tr. 522. In June 2014, Barton Huddleston, M.D., a spine specialist with the same practice, Tr. 510-11, noted, on examination, that Plaintiff's motor exam was normal, there was no gross sensory deficit, and deep tendon reflexes were normal. Tr. 512. *See also* 505. There was reduced range of motion of the lumbar spine, with paraspinal tenderness. *Id*. Dr. Huddleston certified that Plaintiff "has a chronic pain syndrome." *Id*. Shamolie Wyckoff, M.D., also of Spine, Joint & Neuromuscular Rehabilitation, saw Plaintiff in September 2014 and on a number of occasions thereafter and also diagnosed chronic pain syndrome. Tr. 502. An EMG/NCV was read as showing a mild L5 and S1 radiculopathy on the left. Tr. 492. On examination, Plaintiff walked with an antalgic gait. There was full range of motion of the spine. Tr. 489. In October 2014, Plaintiff reported that medication "is working and does not require

6

any changes." Tr. 495. In continuing Plaintiff's prescribed pain medication, Dr. Wyckoff certified that Plaintiff "has a chronic pain syndrome." *Id. See also* Tr. 486 (similar findings in December 2014).

At office visits in October 2013 through January 2014, Dr. Brust noted a normal range of motion. Tr. 469, 473, 475, 479. At monthly office visits throughout 2014, Dr. Brust noted tenderness to palpation, and range of motion limited by pain. Motor strength was 5/5 in all groups, and sensation to touch was intact and equal, as were reflexes. *Id*. Plaintiff's gait was normal, although slow secondary to pain. Straight leg raising was negative. *Id*. *See also* Tr. 448, 451, 454–55, 458, 461, 464, 467.

In February 2015, Dr. Brust provided a medical source statement in which he indicated that, as a result of Plaintiff's severe degenerative disc disease and degenerative joint disease as evidenced by MRI, Plaintiff could lift and carry less than 10 pounds only occasionally, could stand/walk for less than 1 hour and could sit for less than 2 hours during an 8-hour day. Tr. 527-28. He would have to change positions every 5 to 10 minutes, and must walk around every 30 minutes. He would need a sit/stand option, and must lie down every 1-2 hours. Tr. 527. He could only occasionally twist, stoop and climb stairs, and could never crouch or climb ladders. Tr. 528. He would have limitations on the use of his hands, and his asthma would impose environmental restrictions. *Id*. Plaintiff would be absent from work more than 4 days per month. Tr. 529.

The ALJ accorded "some weight" to the state agency reviewing physicians, reasoning that their opinions "are generally supported by and consistent with the overall evidence of record, including the claimant's testimony . . . ." Tr. 24. He considered Dr. Brust's

7

February 2015 opinion as follows:

> Dr. Brust's [sic] provides a very restrictive residual functional capacity and relates the claimant's limitations to January 12, 2010. However, the claimant testified and the record reflects that the claimant was working part-time in 2011 and 2012 cutting grass and completing other landscaping tasks. The claimant further testified and the record notes that the attended at least one Tennessee Titan's football game in 2014. This activity is inconsistent with the limitations in Dr. Brust's residual functional capacity and is thus given little weight.

Tr. 25.[5] The ALJ also gave "little weight" to Dr. Huang's consultative opinion because it included some limitations, *e.g.*, limitations on exposure to noise and ability to reach, kneel and crawl, that "have no basis in the record." Tr. 25. The ALJ found that Plaintiff has the residual functional capacity ("RFC") for a limited range of light work.

### Plaintiff's Claims

Plaintiff asserts the following claims:

1. The ALJ erred by failing to properly consider and weigh the opinion evidence.

2. The ALJ erred by failing to include a function-by-function assessment in the RFC assessment as required by SSR 96-8p.

Memorandum in Support (Doc. No. 15, PageID# 566). Plaintiff does not challenge the ALJ's credibility determination, nor does he challenge the vocational evidence.

### Standard of Review

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the ALJ are supported by substantial evidence and employed the

---

[5] Plaintiff did not actually testify that he cut grass. Rather, Plaintiff testified that he assisted in his brother's landscaping business by "get[ting] stuff for his grass-cutting guys,. . ." Tr. 40.

8

proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)(internal quotation marks and citation omitted). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 475 (6th Cir. 2003). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Services*, 667 F.2d 524, 536 (6th Cir. 1982). If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.,* 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth v. Commissioner Social Security Administration,* 402 F.3d 591, 595 (6th Cir. 2005)(citing *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).

**Discussion**

1. Opinion of Treating Physician

Plaintiff's first assignment of error relates to the ALJ's rejection of Dr. Brust's February 2015 assessment of Plaintiff's ability to engage in work-related activities. It is clear that Dr. Brust is a treating physician. The ALJ found that fact, Tr. 25, and the Commissioner concedes as much. Response (Doc. 16, PageID# 587). His opinion must therefore be accorded controlling weight if it is

9

"well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the ALJ finds that either of these criteria have not been met, he is then required to apply the following factors in determining the weight to be given the opinion: "The length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. ..." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004). In this regard, the ALJ is required to look at the record as a whole to determine whether substantial evidence is inconsistent with the treating physician's assessment. *See* 20 C.F.R. § 404.1527(c)(2), (4). Finally, the Commissioner must provide "good reasons" for discounting the opinion of a treating source, and those reasons must both enjoy support in the evidence of record and be sufficiently specific to make clear the weight given to the opinion and the reasons for that weight. *Gayheart v. Comm'r of Soc. Sec*, 710 F.3d 365, 376 (6th Cir. 2013); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007)(citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5). However, a formulaic recitation of factors is not required. *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

The only reasons given by the ALJ for rejecting Dr. Brust's evaluation was that Plaintiff had worked part-time in 2011 and 2012, *i.e.,* after the date on which Dr. Brust's limitations presumably arose, and had attended at least one professional football game. Tr. 25. Although the ALJ, elsewhere in his opinion, summarized some of the medical evidence, Tr. 23-24, the ALJ made no mention of the actual medical evidence of record in his evaluation of Dr. Brust's opinion. The ALJ did not expressly find that Dr. Brust's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," nor did the ALJ expressly find that the opinion was inconsistent with the other medical evidence of record. *See* 20 C.F.R. § 404.1527(c)(2). Lacking that analysis, it cannot be said that the ALJ provided "good reasons" for discounting Dr. Brust's opinion; certainly, the ALJ's analysis is not sufficiently specific to make clear to this Court the reasons for the weight accorded that opinion. *See Gayheart,* 710 F.3d at 376; *Rogers,* 486 F.3d at 242.

In short, the undersigned concludes that the ALJ did not correctly apply the standards of the treating physician rule and that the matter must be remanded to the Commissioner.

Plaintiff asks that the matter be remanded to the Commissioner with directions for the granting of benefits. Memorandum in Support (Doc. 15, PageID# 577). The Court declines to so recommend. It is true that the ALJ failed to properly evaluate the opinion of Plaintiff's treating provider. However, where, as here, there exists conflicting evidence relevant to the proper resolution of plaintiff's claim, the matter must be remanded for further proceedings by the Commissioner, whose duty it is to resolve such conflicts. *Faucher v.*

11

*Sec'y of Health and Hum. Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

2. RFC Assessment

Plaintiff also contends that the administrative law judge erred in determining Plaintiff's RFC because he failed to engage in the function-by-function analysis required by SSR 96-8p, 1996 WL 374184 (July 2, 1996). Because the determination of Plaintiff's RFC may be significantly impacted by a revised evaluation of Dr. Brust's opinion, the undersigned need not, and does not, address this issue.

**Recommendation**

In light of the foregoing, the undersigned **RECOMMENDS** that Plaintiff's Motion for Judgment (Doc. No. 14) be **GRANTED**, that the decision of the Commissioner be **REVERSED,** that the matter be **REMANDED** to the Commissioner for further consideration of the opinion of Plaintiff's treating physician, and that **FINAL JUDGMENT** be entered pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**Procedure on Objections**

If any party seeks review by the District Judge of this report and recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the report and recommendation, specifically designating the part thereof in question, as well as the basis for the objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days thereafter. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the report and recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to

appeal the judgment of the District Court. *See*, *e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007). Filing only "vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Drew v. Tessmer*, 36 F. App'x 561, 561 (6th Cir. 2002) (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)).

                                                        *s/Norah McCann King*
                                                          Norah M$^c$Cann King
                                      United States Magistrate Judge

August 17, 2017
 (Date)